IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

RACHEL C.,

Plaintiff,

v.

Civil Action No.
3:24-CV-725 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

APPEARANCES: OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM — PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13760-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN. — JASON P. PECK, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on August 14, 2025, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not

[1] This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18. Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, with a directed finding of disability, solely for the purposes of calculation of benefits.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated: August 26, 2025
Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

RACHEL C.,

Plaintiff,

vs. 3:24-CV-725

Commissioner of Social Security,

Defendant.

---------------------------------------------------------x

DECISION - August 14, 2025

the HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding

APPEARANCES (by telephone)

For Plaintiff: LACHMAN, GORTON LAW FIRM
Attorneys at Law
1500 East Main Street
Endicott, NY 13761
BY: PETER A. GORTON, ESQ.

For Defendant: SOCIAL SECURITY ADMINISTRATION
6401 Security Blvd.
Baltimore, MD 21235
BY: GEOFFREY M. PETERS, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

THE COURT: Let me begin by thanking you both for excellent presentations. Before I address the merits of the case, I wanted to talk about consent. The consent form that was filed with the court was signed on June 18, 2024. It specifically consented to have the United States Magistrate Judge Mitchell J. Katz conduct proceedings with direct review to the Second Circuit Court of Appeals. The matter has since been transferred to me.

Attorney Gorton, does your client consent to my hearing and deciding this case with direct appeal to the Second Circuit?

MR. GORTON: Yes.

THE COURT: Thank you.

Plaintiff has commenced this proceeding pursuant to 42, United States Code, Section 405(g) to challenge an adverse determination by the Commissioner of Social Security finding that she was not disabled at the relevant times and, therefore, ineligible for the Title II benefits for which she applied. The background is as follows.

Plaintiff was born in September of 1988. She is currently or will be 37 years of age in two or three weeks. She stands 5-foot-10 in height and she weighs approximately 271 pounds. There are conflicting reports as to where she lives but it appears to be somewhere in the Southern Tier; at one time maybe Binghamton, another time Bennington, New York.

She lives with her husband and either four or five children, the record is a little bit unclear, but she may have had a fifth child since the records that I reviewed.

Plaintiff has a high school degree and attended regular classes while in school. She drives occasionally. Plaintiff stopped working in April of 2020, according to page 277 of the Administrative Transcript. It was due to COVID and a pregnancy. While working she was a food preparer, a line cook, and assistant kitchen manager.

Physically, plaintiff suffers from a left ankle condition that has been variously diagnosed as post traumatic osteoarthritis, status post open reduction internal fixation surgery, arthralgia, degenerative joint disease, and also she suffers from obesity and neck pain. In 2008 plaintiff fractured her ankle, her left ankle. She's had three surgeries. In 2018 she had a screw removal and arthroscopic procedure surgery. The condition has pretty consistently been described by her podiatrist as progressively worsening.

Mentally, which is not an issue, she suffers from some adjustment disorder, anxiety and depression, but has not undergone any specialized treatment. Plaintiff treats with podiatrist Dr. Brian Timm. She also went to see Dr. Guido Laporta on several occasions to obtain a second opinion from a specialist.

In terms of the activities of daily living, the

plaintiff is able to shower, dress, care for her young children, do laundry. The record is somewhat equivocal about cooking. She denied being able to cook at the hearing at page 55, but advised someone on another occasion that she does prepare some meals. That's at 288. She can clean, shop, drive, socialize with friends and family. She engages in social media. She does crossword puzzles, feeds her dogs and watches movies.

Procedurally, plaintiff applied for Title II benefits on August 13, 2020, alleging an onset date of April 5, 2020. That was later amended to April 20, 2020.

She alleges in support of her application disability based on severe damage and displacement of her left ankle and left leg, deterioration of tendons in the Achilles region of her left leg, arthritis, tendonitis of the ankle, and depression. A hearing was held on December 6, 2021 to address that application by Administrative Law Judge Kenneth Theurer. On December 21, 2021 ALJ Theurer issued an adverse decision. The Social Security Administration Appeals Council subsequently denied plaintiff's application for review of that decision on October 13, 2022.

An action was commenced in this court on December 7, 2022, it is civil action number 22-cv-1313, to challenge the determination. There was a stipulated remand on July 6th, 2023 back to the Agency. The Social Security

Administration Appeals Council issued a remand order on July 22, 2023 pointing out several problems with the Administrative Law Judge's analysis and issuing certain directives to cure those problems.

A hearing was conducted again by Administrative Law Judge Theurer with a vocational expert testifying on March 11, 2024. The Administrative Law Judge issued an adverse determination on March 26, 2024 that became a final determination of the Agency and this action was commenced on May 30, 2024, and is timely.

In his decision, which is, as the Commissioner's counsel has argued, extremely thorough and detailed regarding the various treatments administered to the plaintiff, ALJ Theurer applied the familiar five-step sequential test for determining disability. He first noted that plaintiff is insured for benefits through December 31, 2025.

At step one, ALJ Theurer concluded that plaintiff has not engaged in substantial gainful activity since December 2020.

At step two, he concluded that the plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including the dysfunction of the left ankle (post open reduction internal fixation) as well as post traumatic osteoarthritis.

At step three, the ALJ concluded that plaintiff's conditions do not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering listings 1.18, 11.00 and 14.00. The Administrative Law Judge next concluded that notwithstanding all of her medically determinable impairments, including those not considered severe at step two, plaintiff nonetheless retains the residual functional capacity to perform sedentary work pursuant to the regulations, and specifically can occasionally lift and carry 10 pounds; can sit for approximately six hours; can stand or walk for approximately two hours in an eight-hour day with normal breaks; can occasionally climb ramps or stairs; can never climb ropes or scaffolds, can occasionally balance, stoop, kneel, crouch and crawl; can occasionally use foot controls with her left lower extremity; needs to alternate from a seated to a standing position after one hour for no more than five minutes while remaining at the work station and on task; requires the use of a cane to ambulate but retains the ability to carry small objects such as a file or ledger in her free hand; is limited to simple routine and repetitive tasks in a work environment involving only simple work-related decisions and requires few, if any, workplace changes.

Applying that RFC finding, at step four, the

Administrative Law Judge concluded that plaintiff is not capable of performing her past relevant work as a cook helper, line cook and kitchen manager assistant.

Proceeding to step five, the Administrative Law Judge concluded, with the benefit of testimony from a vocational expert, that there is work in the national economy that plaintiff is capable of performing notwithstanding her limitations, citing as three examples, document preparer, order clerk, and charge account clerk, and therefore concluded that she was not disabled at the relevant times.

As the parties know, the Court's function at this juncture is limited to determining whether correct legal principles were applied and whether substantial evidence supports the determination. The standard is rigid, rigorous and is well-known. It was addressed in *Brault v. Social Security Administration Commissioner,* 683 F.3d, 443, Second Circuit 2012. And more recently addressed in many other cases, including *Schillo v. Kijakazi*, 31 F.4th 64, Second Circuit 2022.

In this case plaintiff raises two basic contentions. One, she argues that it was error to fail to include in the RFC finding a requirement that she be allowed to elevate her feet. And two, she claims error in finding that plaintiff can meet on task and absence requirements of gainful employment.

The first requirement in addressing the question of disability is for the administrative law judge to assess plaintiffs's residual functional capacity, or RFC, which represents a finding of the range of tasks that claimant is capable of performing notwithstanding her impairments; 20 C.F.R. 404.1545(a), *Tankisi v. Commissioner of Social Security*, 521 F.App'x 29. That means the claimant's maximum ability to perform sustained work activities in an ordinary setting on a regular and continuing basis, meaning eight hours a day for five days a week or an equivalent schedule. The determination of an RFC is informed by consideration of the claimant's physical and mental abilities, symptomatology and other limitations that could interfere with work activities on a regular and continuing basis, as well as all of the relevant medical and other evidence. 20 C.F.R. 404.1545(a)(3).

In this case the Administrative Law Judge relied on certain medical opinions and addressed them in his decision. Because this case was filed after March 27, 2017, the case is subject to the amended regulations regarding opinion evidence that took place for applications filed after that date, which of course this is.

Under those regulations, no specific evidentiary weight is given to any medical opinion, including controlling weight, and the Administrative Law Judge must consider

whether those opinions are persuasive by primarily considering whether they are supported by and consistent with the record in the case. 20 C.F.R. 404.1520c.

The ALJ must articulate in his determination as to how persuasive he finds all of the medical opinions and explain specifically how he can consider the supportability and consistency factors of those opinions to a sufficient degree to permit meaningful judicial review. In this case there are several medical opinions, including multiple opinions from plaintiff's two treating podiatrists.

On October 14, 2021, Dr. Brian Timm responded to a questionnaire. It appears at pages 453 to 455 of the Administrative Transcript. In it he opines that plaintiff would be off task more than 33 percent of the time and that she would be absent for more than four days per month. He also notes the requirement that she be permitted to change positions every hour, which of course is included in the RFC, and the requirement that she be allowed to elevate her feet to heart level 25 percent of the day. Dr. Timm issued a subsequent opinion on January 19, 2024, pages 782 to 785, which observed that plaintiff's condition was about the same as at the time of the October 14, 2001 questionnaire.

Dr. Timm also issued an opinion dated January 24, 2024. It appears at pages 789 to 792. And again it observes that plaintiff's condition was about the same as the date of

the last questionnaire on October 14, 2021. Dr. Guido Laporta issued an opinion dated October 12, 2021. It appears at 448 to 450 of the Administrative Transcript. It opines that plaintiff would be off task 20 to 33 percent of the time and it indicates that that would depend on whether she was in a weight-bearing or sedentary situation. Also indicates that she would be absent two times per month, and it notes the requirement to elevate feet to heart level 5 to 10 percent of the day.

Dr. Guido Laporta issued an opinion on January 18, 2024, at page 779, and it indicates that plaintiff's condition is about the same as of August 31, 2023. Dr. Laporta also issued another opinion on January 25, 2024, it's at 795 to 798 of the Administrative Transcript, and in that opinion he observes that plaintiff's condition has worsened and the limitations have become more severe, and notes that she rates pain as sharp and to a ten out of ten level.

Although I understand the Commissioner's argument that you could infer that the three other individuals who rendered opinions did not see the need to elevate feet, the need is not mentioned, the issue is not mentioned in FNP Drenell Yarde's February 6, 2024 opinion, that's at 800 to 819; Dr. K. Gallagher's prior administrative medical finding of December 15, 2020, that's at 69 to 84; or Dr. A. Vinluan's

prior medical administrative finding of May 24, 2021, that appears at 86 to 103 of the record.

In terms of foot elevation, as the Administrative Law Judge noted, there is reference in the treatment notes from Dr. Timm of the need to elevate ankle and foot. Specifically at page 357 Dr. Timm reiterates the need to elevate left ankle and foot. Granted, there is no other mention that I could find in the treatment notes, so I agree with the Commissioner on that issue, but both treating podiatrists opined on the need and plaintiff testified that she elevates to reduce swelling and pain. That's at page 54. The Administrative Law Judge explained his reasoning for rejecting the need to include that in the RFC at pages 522 to 523.

I note and I agree with plaintiff, although the Second Circuit maybe has not specifically said this directly, nonetheless, when there is information from a treating source that is uncontested, then there must be overwhelmingly compelling evidence to the contrary to reject it. And that would be *Riccobono v. Saul*, 796 F.App'x. 49, Second Circuit 2020; *Mari Eli S.D. on behalf of S.Y.C.S.*, a minor, 2024 WL 4203972, Northern District of New York, September 16, 2024; and *Amy C. versus Commissioner of Social Security*, 2021 WL 1758764, Northern District of New York, May 4, 2021.

So one of the factors that the Administrative Law

Judge cited was that treatment notes reflected a normal unassisted gait. I went through the treatment notes very, very carefully and I have to say that the Administrative Law Judge must have been reading a different record than I was. It's a classic case of cherrypicking. The treatment notes are replete with indication of antalgic or propulsive gait: 355 to 357; 360 to 362; 383 to 385; 392 to 393; 396 to 398; 418 to 419; 420 to 421; 441 to 443; 458 to 460; 824 to 829. So the one reference at 821 to 823 regarding normal gait is extremely isolated. That's from August 20, 2023.

Secondly, the ALJ indicated that swelling, which is cited as one of the reasons for the need to elevate, was controlled and not observed in exams. Once again, I think we are reading a different record. There was increased swelling at 355 to 357; continued pain and swelling, at 360 to 362; continued pain and swelling October 26, 2020; ankle swollen, 392 to 393; continued pain and swelling 396 to 398; pain and swelling, 437. So I disagree that the treatment notes support that observation. The ALJ discounted pain and said that treatment notes did not support it. Once again, the treatment notes are replete with reports by plaintiff of pain. In my opinion it was error to reject the requirements from Dr. Timm and Dr. Laporta of the need to elevate feet.

There is also a reference to the lack of atrophy. And I understand the Commissioner's argument in this case,

but there was no explanation by the Administrative Law Judge as to how that disproves plaintiff's claims concerning pain and swelling and the need to elevate feet. *Ahmed A.Z. versus Commissioner of Social Security*, 2023 WL 2433796.

The Administrative Law Judge also cited lack of emergency room visits. I'm not sure what relevance that has that she did not go to the emergency room. She certainly made herculean efforts to obtain relief from her pain going to several consultants, going to the trouble of attempting to line up an ankle replacement only to find that the person that she was going to have the ankle replacement done by had retired, and I find that it has really little relevance to the issues at hand. In that regard, this case is very similar to *Debra S. v. Kijakazi*, 2023 WL 1765471, Northern District of New York, February 3, 2023.

So I find it was error to conclude that plaintiff's symptoms were adequately controlled with medications and brace and to focus on the limited course of treatment. The evidence and treatment notes show that plaintiff's pain is uncontrolled and her condition is progressively worsening. She explored replacement but insurance issues and failed attempt in New York City to see a doctor no longer doing it precluded that. She has tried various medications and injection had little, if any, relief.

It boils down to, as I read her treatment records,

the possibility of replacement, which she is either too young for and/or cannot afford because she has no insurance coverage, fusion or below knee amputation.

There is also the issue of off task. The defendant argues that Dr. Laporta's opinion concerning off task depended on whether she was weight bearing or sedentary, pointing out that the RFC in this case called for sedentary work. Actually, the expert stated, Dr. Laporta stated that even at sedentary she would be off task 20 percent and the vocational expert testified that the limit for employment was 15 percent.

Defendant urges the Court to reject and support the rejection of the opinions of Drs. Timm and Laporta because they are on so-called check-box forms. However, a case that I am painfully familiar with, in *Colgan v. Kijakazi,* 22 F.4th 353, Second Circuit 2022, made clear that the fact of a form being on a check-box-like form alone is not a basis to reject it. In this case the opinions given by Dr. Timm and Dr. Laporta are consistent with and supported by long-standing treatment notes which are all in the record, and therefore, I don't find this to be a proper basis to reject those opinions.

In sum, I find it was error to reject the opinions regarding off task and need to elevate legs and will grant judgment on the pleadings to the plaintiff.

This case has been pending for five years; it's been before this Court twice. The treating sources in this case are unanimous that plaintiff simply cannot meet the demands of even sedentary work. The vocational expert testified, as plaintiff has argued, that if there is a need to elevate feet, it would be work preclusive; if she is off task more than 15 percent or absent more than one time per month, it would be work preclusive. On that basis I find that there is persuasive proof of disability. I will, therefore, direct that the matter be remanded with a directed finding of disability solely for the purposes of calculation of benefits.

Thank you both. I hope you have a good afternoon.

MR. GORTON: Thank you, your Honor.

MR. PETERS: Thank you, your Honor.

* * *

C E R T I F I C A T I O N

I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Eileen McDonough

EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter